**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. _____

MSP RECOVERY CLAIMS, SERIES LLC, MSPA CLAIMS 1, LLC, SERIES PMPI, a designated series of MAO-MSO RECOVERY II LLC, and MSP RECOVERY CLAIMS SERIES 44, LLC,

                Plaintiffs,

v.

THE TRAVELERS CASUALTY COMPANY, THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, THE TRAVELERS INDEMNITY COMPANY, THE TRAVELERS INDEMNITY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, AND TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY,

                Defendants.
_____/

## NOTICE OF REMOVAL

Defendants The Travelers Casualty Company, The Travelers Indemnity Company of Connecticut, The Travelers Indemnity Company, The Travelers Indemnity Company of America, Travelers Casualty and Surety Company, Travelers Property Casualty Company of America, and Travelers Property Casualty Insurance Company (collectively, "Defendants") hereby remove this action from the Circuit Court of the Eleventh Circuit in and for Miami-Dade County, Florida, General Jurisdiction Division, to this Court. This Court has jurisdiction over this action based on 28 U.S.C. §§ 1332, 1441, and 1446, for the reasons set forth below.

1. On August 7, 2023, the Eleventh Circuit Court in and for Miami-Dade County, Florida granted leave for Plaintiffs MSP Recovery Claims Series, LLC, MSPA Claims 1, LLC, Series PMPI, and MSP Recovery Claims Series 44, LLC (collectively, "Plaintiffs") to file a Second Amended Complaint (the "Second Amended Complaint" or "SAC") in *MSP Recovery Claims LLC v. Travelers Casualty Company,* Case No.: 2018-042191-CA-01 (the "Action"), a copy of which is attached hereto as Exhibit 1.

I. **PROCEDURAL HISTORY**

2. The initial Complaint in this Action was filed on December 20, 2018, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. The initial Complaint sought a pure bill of discovery to obtain information about accident claims made to Defendants by "Medicaid Enrollees" of Plaintiffs' alleged assignors. The allegations in the initial Complaint did not refer to any monetary demands, addressed only Medicaid-related items, and solely set forth a request for discovery. A copy of the initial Complaint is attached hereto as Exhibit 2.

3. On February 4, 2019, Defendants removed this Action to the United States District Court for the Southern District of Florida, Case No.: 1:19-CV-20465 (S.D. Fla.). The District Court granted Plaintiff's Motion for Remand on April 26, 2019. Case No.: 1:19-CV-20465 (S.D. Fla.), Doc. 26. Although the District Court found that the value of Plaintiff's sole count seeking discovery was too "speculative" to meet the amount-in-controversy requirement, the Court stated that "Defendants, of course, retain the right to later remove the action if and when the Plaintiffs file a new case or *amend the Complaint* to allege either a claim arising under federal law or a claim for an amount certain and in excess of the jurisdictional requirement." *Id.* at 4 (emphasis added).

4. Defendants appealed the remand order, and on April 30, 2021, the Eleventh Circuit dismissed the appeal for lack of jurisdiction. *See* Case No.: 19-12085 (11th Cir.), Doc. 52-1, at 12. After Defendants' appeal was dismissed, the case laid dormant until the state court issued a Notice of Lack of Prosecution and Order to Appear for Hearing to Plaintiffs on December 28, 2021. *See* Ex. 3.

5. On April 1, 2022, Plaintiffs filed an Amended Complaint, which is attached hereto as Exhibit 4. Plaintiff's Amended Complaint modified the types of information sought in the pure bill count regarding Medicaid beneficiaries and added a count seeking a declaration of Defendants' obligations to Florida Medicaid providers. *See* Ex. 4, at ¶¶ 48–65. The allegations in the Amended Complaint, like the initial pleading, did not set forth an amount in controversy, did not refer to any specific claims or actual demands for money, and addressed only Medicaid-related items. Defendants moved to dismiss the Amended Complaint on May 18, 2022. *See* Ex. 5. The state court never ruled on the motion to dismiss.

6. On May 30, 2023, Plaintiffs filed their Motion for Leave to File a Second Amended Complaint (the "Motion"). *See* Ex. 1, at 1.

7. On August 7, 2023, the state court granted the Motion. A copy of the state court order granting the Motion is attached hereto as Exhibit 6.

8. The Second Amended Complaint significantly changed the nature of the case and expanded the relief sought. For example, the Second Amended Complaint, for the first time:

    a. Seeks to certify a putative class composed of "hundreds" of both Medicaid and Medicare Secondary Payers (SAC ¶¶ 83–103);

    b. Seeks a declaration concerning obligations allegedly owed to Medicare Secondary Payers (*id.* ¶¶ 104–13); and

   c. Alleges that Plaintiffs have tendered over 100 demand letters to Defendants which are directly impacted by the declaratory relief Plaintiffs seek (*id.* ¶ 78).

## II. REMOVAL IS APPROPRIATE UNDER CAFA

9. Section 1441(a) provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

10. This Court has original jurisdiction over this putative class action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), for the reasons set forth below.

11. Venue is proper in this Court under 28 U.S.C. § 1441(a) and Local Rule 3.1 because this action is being removed from the state court in which it was filed, the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

  A. **The Notice of Removal Is Timely**

12. Where "the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

13. Here, the state court granted leave to file the Second Amended Complaint on August 7, 2023. Prior to the court's order granting leave to file the Second Amended Complaint, the case was limited to Florida Medicaid and did not present a federal question under 28 U.S.C. § 1446.

4

14. Further, prior to the court's order granting leave to file the Second Amended Complaint, the case was not a putative class action and thus not suitable for removal under CAFA. 28 U.S.C. § 1453.

15. This Notice of Removal is timely filed within thirty (30) days of the Court granting leave to file the Second Amended Complaint, in accordance with 28 U.S.C. § 1446. *See, e.g., Bollinger v. State Farm Mut. Auto. Ins. Co.*, 538 F. App'x 857, 863 (11th Cir. 2013) ("[T]he only relevant date in the removal timeliness analysis is . . . the date on which the state court granted Bollinger's motion for leave to file a second amended complaint . . . ."); *see also Miami Beach Cosm. & Plastic Surgery Ctr., Inc. v. UnitedHealthcare Ins. Co.*, Case No.: 1:15-CV-24041-UU, 2016 WL 8607846, at *3 (S.D. Fla. Jan. 8, 2016) ("In the usual case, regardless of whether removal is based on federal question or diversity jurisdiction, a *proposed* amended complaint will not suffice to furnish a basis for removal jurisdiction.").

16. Although there is a one-year time limitation that applies to some diversity removals, it does not apply to removal under CAFA. *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply) . . . .").

    **B.**     **Jurisdiction Is Proper Under CAFA**

17. This suit satisfies all of the requirements under CAFA for federal jurisdiction: (1) the putative class exceeds 100; (2) minimal diversity exists; (3) the amount in controversy exceeds $5 million; and (4) the exceptions to CAFA do not apply. *See* 28 U.S.C. § 1332(d).

18. CAFA authorizes removal of such actions pursuant to 28 U.S.C. § 1446.

19. As a threshold matter, this action is a putative "class action" as defined by CAFA because it is a case brought by a representative of a putative class and was filed in state court pursuant to a statute or rule authorizing such a class.[1]  *See* 28 U.S.C. § 1332(d)(1)(B).

### i. The Number of Putative Class Members Is 100 or Greater

20. CAFA requires that the proposed class consist of at least 100 persons. 28 U.S.C. § 1332(d)(5). Here, Plaintiff's proposed class allegedly encompasses more than 100 putative class members.

21. The Second Amended Complaint seeks to certify a class of "[a]ll non-governmental organizations and their assignees (collectively 'Secondary Payors'), that provide health and prescription benefits in the State of Florida to Members who are also insured by the Travelers Defendants under a No-Fault, PIP, or Med Pay insurance policies." SAC ¶ 84.

22. The Second Amended Complaint expressly alleges that "[t]he Class consists of **hundreds** of Secondary Payors and their assignees and is so numerous that individual joinder of each Class Member is impracticable." SAC ¶ 94 (emphasis added).

### ii. Plaintiffs and Defendants Are Minimally Diverse

23. The second CAFA requirement is minimal diversity, which requires that at least one putative class member be a citizen of a different state than any one defendant. 28 U.S.C. § 1332(d)(2)(A); *see also Evans v. Walter Indus.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (stating that "[u]nder CAFA, federal courts now have original jurisdiction over class actions in which . . . there is minimal diversity (at least one plaintiff and one defendant are from different states)").

---

[1] The Second Amended Complaint seeks to certify a class pursuant to Rules 1.220(b)(1), (b)(2), and (b)(3) of the Florida Rules of Civil Procedure, which is the Florida equivalent to Rule 23 of the Federal Rules of Civil Procedure. *See* SAC ¶¶ 83–103.

24. Under CAFA, a limited liability company is a citizen of the state where it has its principal place of business as well as the state under whose laws it is organized. 28 U.S.C. § 1332(d)(10). Corporations are citizens in the states of their incorporation and their principal place of business. 28 U.S.C. § 1332(c)(1).

25. As set forth below, based on the allegations of the Second Amended Complaint, all Plaintiffs are citizens of Florida, Delaware, and New Jersey.

    a.    MSP Recovery Claims, Series LLC alleges it is a series limited liability company organized under the laws of Delaware with its principal place of business in Florida. *See* SAC ¶ 52.

    b.    Plaintiff MSPA Claims 1, LLC alleges it is a limited liability company organized under the laws of Florida with its principal place of business in Florida. *Id.* ¶ 55.

    c.    Plaintiff MAO-MSO alleges it is a series limited liability company organized under the laws of Delaware with its principal place of business in New Jersey. *Id.* ¶ 56.

    d.    Plaintiff MSP Recovery Claims Series 44, LLC alleges it is a series limited liability company organized under the laws of Delaware with its principal place of business in Florida. *Id.* ¶ 57.

26. All Defendants are citizens of Connecticut.

    a.    Travelers Casualty Company is a corporation organized under the laws of the State of Connecticut with its principal place of business in Connecticut. *See* Ex. 7.

    b.    Defendant Travelers Indemnity Company of Connecticut is a corporation organized under the laws of the State of Connecticut with its principal place of business in Connecticut.  *See* Ex. 8.

    c.    Defendant Travelers Indemnity Company is a corporation organized under the laws of the State of Connecticut with its principal place of business in Connecticut.  *See* Ex. 9.

    d.    Defendant Travelers Indemnity Company of America is a corporation organized under the laws of the State of Connecticut with its principal place of business in Connecticut.  *See* Ex. 10.

    e.    Defendant Travelers Casualty and Surety Company is a corporation organized under the laws of the State of Connecticut with its principal place of business in Connecticut.  *See* Ex. 11.

    f.    Defendant Travelers Property Casualty Company of America is a corporation organized under the laws of the State of Connecticut with its principal place of business in Connecticut.  *See* Ex. 12.

    g.    Defendant Travelers Property Casualty Insurance Company is a corporation organized under the laws of the State of Connecticut with its principal place of business in Connecticut.  *See* Ex. 13.

27.    In sum, at least one class member is a citizen of a different state than a Defendant and, as a result, minimal diversity exists.

### iii. The Amount in Controversy Exceeds $5,000,000

28. CAFA requires that the amount in controversy exceed $5,000,000 for the entire putative class in the aggregate, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).

29. As the United States Supreme Court has held, Defendants' notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "Evidence establishing the amount is required by §1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

30. The test for CAFA's amount-in-controversy requirement is not what the plaintiff and putative class ultimately will recover, but what they potentially could recover. *See, e.g.*, *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1318 (11th Cir. 2014) ("Although members of the putative class might not ultimately recover the full $68,176,817.69, that possibility does not shut the door on federal jurisdiction."). "For CAFA purposes, [courts] aggregate the claims of individual class members and consider the monetary value that would flow to the entire class if declaratory relief were granted." *Id.* at 1316.

31. "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018) (quoting *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)).

32. Based upon the allegations in the Second Amended Complaint, Defendants plausibly allege that the $5 million CAFA amount-in-controversy requirement is satisfied.

33. The object of the relief sought in this action is to permit Plaintiffs and the putative class to pursue recovery of claims against Defendants that would otherwise be barred by law. Specifically, the declaration sought by Plaintiffs would, among other things:

    a. Require Defendants to affirmatively investigate their liability to the putative class and then notify class members of that liability (*see* SAC ¶ 112(a)–(b));

    b. Ignore legal conditions precedent for Plaintiffs and the putative class to file suits for damages against Defendants, such as the requirement that plaintiffs tender pre-suit demand letters pursuant to Florida law (*id.* ¶¶ 112(c)–(d));

    c. Effectively strip Defendants of their statutory 30-day cure period, which is triggered by the receipt of a demand letter which complies with the requirements of Florida law (*id.*);

    d. Purport to nullify Defendants' case-dispositive defenses to subsequent suits for damages (*id.*);[2]

    e. Require Defendants to provide class members with information necessary to bring suits for damages (*id.* ¶¶ 112(d)(i), (d)(iii)); and

    f. Reduce Plaintiffs' and class members' evidentiary burdens in tendering reimbursement demands or in subsequent suits, including by relieving them of their obligation to prove they have a legal right to pursue the claim via "assignment" (*id.* ¶ 112(d)).

---

[2] For example, Plaintiffs ask this Court to declare that Plaintiffs and class members are exempt from the Florida Statute § 627.736(10) requirement that they send a detailed pre-suit demand to Defendants and that Defendants be given 30 days to pay before any lawsuit for payment of No Fault benefits can be filed. *See* SAC ¶ 112. The requested relief directly contradicts the Eleventh Circuit Court of Appeals' decision in *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314, 1322 (11th Cir. 2023) (affirming summary judgment in favor of insurer where Plaintiff failed to satisfy this requirement).

34. If successful on the merits, Plaintiffs and putative class members would use the declaratory judgment to pursue recovery of payments allegedly owed to them by Defendants. As a result, the amount in controversy is measured by the total amount of the recovery Plaintiffs and putative class members "may be eligible to recover from [Defendants] in the event that they obtain declaratory relief." *S. Fla. Wellness*, 745 F.3d at 1316, 1318 (holding that amount in controversy is satisfied by the value of the claims that the putative class "could recover" in subsequent suits if "armed with a declaratory judgment").

35. In fact, Plaintiffs expressly allege that they have tendered "100 reimbursement demands" to Defendants to "no avail." SAC ¶ 78. The declaration Plaintiffs seek would vitiate the valid defenses Defendants have raised in response to those demands. *Compare id.* ¶¶ 79–81 (describing the defenses that Defendants raised to Plaintiffs' demands) *with id.* ¶ 112 (the declaration Plaintiffs seek).

36. Plaintiffs' demand letters likely satisfy the amount in controversy requirement even before considering the claims of putative class members. For example, one such demand letter (of the more than 100 letters Plaintiffs allegedly sent Defendants) claims that Defendants owe $183,364.36. Ex. 14, at 1; *see also* Ex. 15, at 1 (claiming an "amount owed" of $52,231.90); Ex. 16, at 1 (claiming an "amount owed" of $30,983.02).

37. Moreover, Plaintiffs' demand letters claim a legal entitlement to "twice the total amount due plus interest" pursuant to the Medicare Secondary Payer Act. *See* Ex. 14, at 2. As a result, the value of each claim balloons further. *See, e.g.*, Ex. 14, at 2 (demanding a "total debt owed" of $439,223.71 on an alleged $183,374.36 claim); Ex. 15, at 1 (demanding a "total debt due" of $118,105.25 on an alleged $52,231.95 claim); Ex. 16, at 1 (demanding a "total debt due" of $68,543.02 on an alleged $30,983.02 claim).

38. Considering the potential claims brought on behalf of absent class members, the total amount in controversy is potentially far greater. Plaintiffs allege there are "hundreds" of class members and "***several thousand***" claims. *See* SAC ¶¶ 94, 99 (emphasis added). Even if there are only ***one thousand*** claims at issue, the amount in controversy is satisfied if each claim is worth, on average, $5,000. But if Plaintiffs' claims are typical of class members' claims—as Plaintiffs allege (*id.* ¶ 89)—then each of these "thousands" of claims would be worth well in excess of $5,000.

39. Further, Plaintiffs have requested an award of attorneys' fees pursuant to Florida Statute § 627.428. *See* SAC ¶ 113. Plaintiffs' assertion of a statutory right to attorneys' fees is properly considered in ascertaining the amount in controversy. *See, e.g.*, *Smith v. GTE Corp.*, 236 F.3d 1292, 1305 (11th Cir. 2001) ("There is an exception to the 'American Rule,' and thus, 'direct legal authority' supporting inclusion of a claim for attorney's fees in determining the amount in controversy, when an award of fees is authorized either by statute or contract.").

40. For all the foregoing reasons, the $5 million CAFA amount in controversy requirement is more than satisfied.

### III. THE SECOND AMENDED COMPLAINT PRESENTS A FEDERAL QUESTION

41. Plaintiffs' Second Amended Complaint seeks declaratory relief as to the obligations of Defendants vis-a-vis "Secondary Payors," which Plaintiffs define to include Medicare Advantage Organizations ("MAOs").[3] *See* SAC ¶ 1 n.1. Specifically, Plaintiffs seek a declaration that Defendants "must determine whether their insureds are also Members covered by Secondary

---

[3] MAOs are private, for-profit companies that contract with the federal Centers for Medicare and Medicaid Services ("CMS") to provide Medicare coverage based on a flat fee per enrollee. 42 U.S.C. § 1395w-21; 42 U.S.C. § 1395w-23. Part C of the Medicare Act allows beneficiaries to obtain benefits through MAOs, instead of directly from the government. 42 U.S.C. § 1395w-21(a).

Payors, and if so, then, the . . . Defendants must coordinate benefits with Secondary Payors." *Id.* ¶ 5(a).

42. This Notice of Removal is timely because it is filed within thirty (30) days of the filing of the Second Amended Complaint, which was the first pleading in this Action that presented a federal question. 28 U.S.C. § 1446; *see also, e.g.*, *Bollinger*, 538 F. App'x at 863; *Jeffries v. Sunrise Hotel Corp.*, Case No.: 08-61132-CIV, 2008 WL 4951600, at *2 (S.D. Fla. Nov. 18, 2008). There is no one-year bar for removal of cases based on a newly-introduced federal question. *Jeffries*, 2008 WL 4951600, at *2 ("Defendants properly removed the case within thirty days of the first notice of a federal question.").

43. The coordination of benefits between insurers like Defendants and MAOs is governed by federal law. In particular, the federal Medicare Secondary Payer Act (the "MSP Act") and its implementing regulations specifically set forth the obligations of MAOs and insurers with respect to the coordination of benefits. *See* 42 U.S.C. § 1395y(b)(4)–(8) (detailing coordination of benefits and information sharing obligations); *see also* 42 C.F.R. § 422.108(b) (providing that before making any payment an MAO "must" "[i]dentify payers that are primary to Medicare," "[i]dentify the amounts payable by those payers," and "coordinate its benefits to Medicare enrollees with the benefits of the primary payers"); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, Case No.: 1:17-CV-1537, 2019 WL 6311987, at *6 (C.D. Ill. Nov. 25, 2019), *aff'd*, 994 F.3d 869 (7th Cir. 2021) ("[T]he implementing regulations require MAOs to identify and coordinate with primary insurers.").[4]

---

[4] *See* 42 U.S.C. § 1395y(b)(2)(A) ("[T]he term 'primary plan' means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies."); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1316 (11th Cir. 2019) ("The MSP Act made private insurers 'primary' payers (pay first) and Medicare the 'secondary' payer (pay only if a balance is remaining).").

44.  Accordingly, resolution of Plaintiffs' claim for declaratory relief regarding Defendants' obligations to coordinate benefits with MAOs "necessarily depends upon the resolution of a substantial question of federal law," creating federal question jurisdiction pursuant to 28 U.S.C. § 1331, because the determination of Defendants' obligations to coordinate benefits with MAOs, if any, will necessarily depend on the construction of the MSP Act and its implementing regulations. *Stone v. Bank of New York Mellon, N.A.*, 609 F. App'x 979, 981 (11th Cir. 2015); *see, e.g.*, *Harrell v. Farm Credit Nw. Fla., ACA*, No. 3:06CV726 J16TEM, 2006 WL 3507949, at *3 (M.D. Fla. Dec. 5, 2006) ("[A] court will have federal question jurisdiction when an essential element of the claim requires a court to determine the effect or construction of a federal law.").

45.  In fact, in moving to remand a similar case, Plaintiffs explicitly admitted that their declaration seeks an interpretation of "[t]he interaction between the Medicare Secondary Payer Act" and state law. *See* Ex. 17 (*MSP Recovery Claims, Series LLC. v. Hartford Accident and Idem. Co.*, Case No. 1:23-CV-22244-DPG (S.D. Fla. July 17, 2023), Doc. 19), at 12–13.

### IV.  PROCEDURAL REQUIREMENTS

46.  Removal is timely pursuant to 28 U.S.C. § 1446(b) because Defendants filed this Notice of Removal within 30 days of when the Court granted Plaintiffs' Motion for Leave to File a Second Amended Complaint.

47.  Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly serve a copy of this Notice of Removal on counsel for Plaintiffs and will file a copy of this Notice of Removal with the clerk of the state court.

### V.  RESERVATION OF DEFENSES

48.  As of the filing of this Notice of Removal, no further proceedings have been had in the state court action.

49. Nothing in this Notice of Removal shall be interpreted as a relinquishment or waiver of Defendants' right to assert any defense or affirmative matter.

50. Defendants reserve the right to amend or supplement this Notice of Removal.

WHEREFORE, Defendants remove this action, pending in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Dated: August 18, 2023                                    Respectfully submitted,

                                                          /s/ *Laura Besvinick*
*Of Counsel*:                                             Laura Besvinick, Esq.
Bryce L. Friedman                                         FL Bar No.:  391158
Alan C. Turner                                            CLYDE & CO LLP
SIMPSON THACHER & BARTLETT LLP                            1221 Brickell Avenue, Suite 1600
425 Lexington Avenue                                      Miami, FL 33131
New York, NY 10017                                        Tel: (305) 446-2646
Tel: (212) 455-2000                                       Fax: (305) 441-2374
Fax: (212) 455-2502                                       lbesvinick@clydeco.us
bfriedman@stblaw.com
aturner@stblaw.com                                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that on August 18, 2023, a copy of the Notice of Removal with supporting exhibits was sent via electronic mail to all counsel or parties of record on the Service List below.

/s/ *Laura Besvinick*
Laura Besvinick, Esq

## Service List

Alexis Fernandez, Esq.
FL Bar No.: 1008230
John H. Ruiz, Esq.
FL Bar No.: 928150
MSP RECOVERY LAW FIRM
2701 S. Le Jeune Road, 10th Floor
Coral Gables, FL 33134
Tel: (305) 614-2222
afernandez@msprecoverylawfirm.com
jruiz@msprecoverylawfirm.com

J. Alfredo Armas, Esq.
FL Bar No.: 360708
ARMAS BERTRAN ZINCONE
4960 SW 72nd Avenue, Suite 206
Miami, FL 33155
Tel: (305) 461-5100
alfred@armaslaw.com